_____
                                    )
LAWRENCE K. TRAINOR,                )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )        **Civil Action No.**
                                    )        **09-10349-DJC**
HEI HOSPITALITY LLC,                )
HEI HOSPITALITY MANAGEMENT LLC,     )
and MERRITT HOSPITALITY LLC,        )
                                    )
        Defendants.                 )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                    January 13, 2012

## I.    Introduction

Plaintiff Lawrence Trainor ("Trainor") brought this suit against the Defendants ("HEI") alleging age discrimination and retaliation in violation of both Massachusetts and federal law. After an eight-day trial, the jury returned a special verdict containing the following findings: first, that Trainor had not proved by a preponderance of the evidence that HEI discriminated against him because of his age; second, that Trainor had proved by a preponderance of the evidence that HEI retaliated against him; third, that Trainor suffered damages as a result of HEI's retaliation; fourth, that due to the damages Trainor suffered as a result of HEI's retaliation, he should be awarded $500,000 to compensate for lost back pay, $750,000 to compensate for lost front pay, and $1,000,000 to compensate for emotional distress; fifth, that Trainor had proved that when HEI committed retaliation, HEI knew or had reason to know that their actions violated Massachusetts law; and sixth, that Trainor had not proved that when HEI committed retaliation, HEI wilfully

violated federal law.

Trainor filed a post-verdict motion for the assessment of multiple damages pursuant to Mass. Gen. L. c. 151B, § 9, which states that in age discrimination cases brought pursuant to Massachusetts law, "[i]f the court finds for the petitioner, recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the act or practice complained of was committed with knowledge, or reason to know, that such act or practice violated" the anti-retaliation provisions of Massachusetts' anti-discrimination law. The Court held that § 9 applied in this case and doubled the jury's actual damages award. Trainor v. HEI Hospitality LLC, 2011 WL 1670234, at *1 (D. Mass. April 14, 2011).

The parties also filed a separate series of post-verdict motions: HEI filed a motion for judgment as a matter of law and a separate motion for remittitur or new trial; Trainor filed a motion for attorney's fees and costs, and Trainor renewed a motion he had filed before trial seeking (as a component of his front pay award) injunctive relief allowing him to invest in certain HEI investment funds otherwise restricted to employees and other specified investors. At the conclusion of a hearing on these motions, the Court denied HEI's motion for judgment as a matter of law, stating that it would subsequently provide a written statement of reasons and took the remaining motions under advisement. The Court will now address each of these motions in turn.

## II.    Discussion

### A.    HEI's Motion for Judgment as a Matter of Law

The standard for granting a post-verdict motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) is "stringent." Malone v. Lockheed Martin Corp., 610 F.3d 16, 20 (1st Cir. 2010). "Courts may only grant a judgment contravening a jury's determination when the evidence

points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Id. (citations and internal quotations omitted). A court resolving a Rule 50 motion in the wake of a jury verdict "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence," because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations and internal quotations omitted). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." Id. at 151 (citing 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2529, p. 299 (2d ed. 1995)).

HEI's motion for judgment as a matter of law is based on its assertion that HEI set forth a plan to terminate Trainor's employment before Trainor engaged in protected conduct, precluding liability for retaliation stemming from HEI's termination of Trainor's employment after he engaged in such conduct. Def. Memo, D. #110 at 5-12. HEI is correct that, as a matter of law, "[e]mployers need not suspend previously planned transfers upon discovering that a[n] [employment discrimination complaint] has been filed, and their proceeding along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001). But the evidence presented to the jury, viewed under the deferential standard articulated in Reeves, does not support HEI's position.

HEI points to Trainor's testimony that on November 14, 2008, HEI Chief Operating Officer Ted Darnall told Trainor "you either move to Norwalk or you become general manager of the Cambridge Le Meridien" hotel, Trial Transcript Day 2, D. #93 at 54, and asserts that this statement

compels the inference that HEI planned to terminate Trainor's employment if Trainor refused to either move to Norwalk or manage the Cambridge Le Meridien. Def. Memo, D. #110 at 8-9. Trainor's testimony regarding his conversation with Darnell may permit the inference sought by HEI, but it does not compel such an inference. Trainor himself testified that he did not think the conversation implied that his position was at risk. Trial Transcript Day 2, D. #93 at 54 ("I had no reason to believe – no one told me I wouldn't be doing my job"). The jury heard additional evidence supporting Trainor's interpretation of his conversation with Darnall, including testimony from Bob LaCasse, general manager of the HEI Le Meridien San Francisco, stating that he received an offer letter dated November 25, 2008, more than a week after the conversation between Darnall and Trainor, in which LaCasse was told that during certain assignments he would report to the Senior Vice President of Operations for the Transition Team, a position filled at that time by Trainor and that LaCasse expected that he would be reporting to Trainor. Trial Transcript Day 6, #96 at 87.[1] Trainor testified that LaCasse told him about the offer letter and that, per the offer letter, LaCasse would be reporting to Trainor. Trial Transcript Day 2, #93 at 60. Having heard that HEI was instructing LaCasse in late November to report to Trainor, the jury could reasonably have drawn the inference that Darnall's statements in early November did not place Trainor's job at risk. The jury was thus entitled to conclude that when HEI eliminated Trainor's position only eleven days after he had raised allegations of age discrimination, see Exhibit List, D. 78 at 2, Exhibit 23 (letter dated December 4, 2008 from Trainor's counsel to HEI alleging age discrimination); Trial Transcript Day 2, D. #93 at 65-66 (Trainor's testimony that he was informed on December 15, 2008 that HEI was eliminating his position), or when HEI terminated Trainor's employment only three hours after

---

[1]The offer letter itself was entered into evidence. See Exhibit List, D. 78 at 2, Exhibit 50.

discovering he had filed an MCAD complaint, see Exhibit List, D. 78 at 2, Exhibit 34 (e-mail from Trainor's counsel at 2:51pm, January 2, 2009, notifying HEI of Trainor's MCAD complaint), Exhibit 36 (e-mail from HEI at 5:45 pm, January 2, 2009, terminating Trainor's employment), HEI was not merely "proceeding along lines previously contemplated," Breeden, 532 U.S. at 272, but was retaliating against Trainor unlawfully. See Iorio v. Aramark Servicemaster, 2005 WL 3728715 at *20 (D. Mass. Sept. 30, 2005) (holding that a "plaintiff can establish causation based solely on evidence of temporal proximity between the protected conduct and the termination only if the two events are 'very close' in time") (emphasis in original) (quoting Mole v. Univ. of Mass., 442 Mass. 582, 595 (2004) (quoting in turn Breeden, 532 U.S. at 273)).

Accordingly, based upon the record before the jury and for these reasons stated above, HEI's motion for judgment as a matter of law was DENIED.

### B.    HEI's Motion for Remittitur or New Trial

Remittitur is called for where a jury award "is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 44 (1st Cir. 2011) (internal quotation marks and citations omitted).  In resolving a remittitur motion, courts "must examine the evidence in the light most favorable to the award, drawing all possible inferences in its favor." Smith v. K-Mart Corp., 177 F.3d 19, 21 (1st Cir. 1999).  A court "may remit a jury's award down to the maximum amount that could have been awarded based upon the evidence presented at trial." Real View, LLC v. 20-20 Technologies, Inc., 2011 WL 4375641 at *2 (D. Mass. Sept. 21, 2011) (citing Marchant v. Dayton Tire & Rubber Co., 836 F.2d 695, 704 (1st Cir. 1988)).  "When a court orders remittitur, the plaintiff has the option of either accepting the new damages figure or moving forward with a new trial." Id.

(citing Mejías-Quiros v. Maxxam Property Corp., 108 F.3d 425, 428 (1st Cir. 1997)).

HEI raises five distinct challenges to the amount of damages awarded to Trainor: first, that the jury's front pay and back pay awards are grossly excessive because Trainor failed to sufficiently mitigate his damages; second, that the jury's front pay award is grossly excessive because it is speculative; third, that the jury's front pay award would be grossly excessive if, as the Court has already ruled, Trainor, 2011 WL 1670234 at *1, the overall award is subjected to statutory multiplication; fourth, the jury's award of $1,000,000 for emotional distress is grossly excessive; and fifth, that the application of multiple damages under Mass. Gen. L. C. 151B, § 9 is inappropriate. The Court will address each of HEI's challenges.

### 1. Front Pay and Back Pay - Duty to Mitigate

HEI argues that the jury's award for back pay and front pay must be eliminated or remitted because, HEI asserts, Trainor failed to mitigate his damages by using "reasonable diligence in finding other suitable employment." Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 106 (2009) (quoting Clarke v. Frank, 960 F.2d 1146, 1152 (2d Cir. 1992)). This argument is unavailing in light of the evidentiary record. Trainor testified at length and in detail with regard to his efforts to find alternative employment after his termination from HEI, including looking for positions "below [his] category" given his position at HEI. Trial Transcript Day 2, D. #93 at 78; see also id. at 77-82 (detailing Trainor's various efforts to find employment). The jury was entitled to believe this testimony and to consider Trainor's efforts to have constituted reasonable diligence. The Court will not disturb the jury's front and back pay awards on duty-to-mitigate grounds.

### 2. Front Pay - Speculation

The jury awarded Trainor $750,000 in damages for lost front pay. This number suggests a

front pay award based on three years of future pay at a rate of $250,000, which is consistent with Trainor's testimony that he had planned to retire in late 2013 or early 2014, roughly three years hence from the time of trial, Trial Transcript Day 2, D. #93 at 5, 134, and with the testimony provided by Trainor's economic expert that Trainor was compensated by HEI at a rate of roughly $250,000 per year at net present value. Trial Transcript Day Seven, D. #97 at 32-38.

In the front pay context, "damages may not be determined by speculation or guess." Conway v. Electro Switch Corp., 402 Mass. 385, 388 (1988). HEI argues that the jury's front pay award is based on mere speculation that Trainor's position would not be terminated prior to 2013, especially in light of what HEI describes as a deteriorating economic enviorment for the hotel acquisition work that was at the heart of Trainor's responsibilities. The evidence does not compel such a conclusion. The jury heard testimony that HEI acquired two hotels in 2009, two in 2010, one in the first four months of 2011 prior to trial and one additional hotel acquisition was pending at the time of trial. Trial Transcript Day Three, D. #94 at 103-04. HEI urged the jury to infer from this evidence that HEI was unlikely to require the type of services provided by Trainor in the future; Trainor urged an inference that it was reasonably certain that those services would be required by HEI at least until 2013. The evidence, viewed in the light most favorable to the jury award, was clearly sufficient to support the latter inference and does not compel the conclusion sought by HEI. The Court will not disturb the jury's front pay award on the ground that the award is too speculative.

### 3.      Front Pay - Multiple Damages

HEI objects to the jury's award of front pay on the additional ground that, as HEI sees it, the front pay award is inappropriate if the Court adheres to its holding, Trainor, 2011 WL 1670234 at *1, and doubles Trainor's overall award per Mass. Gen. L. c. 151B, § 9. HEI's argument does not

support a remittitur order to reduce the award in this manner. HEI relies on two cases, <u>Wildman v. Lerner Stores Corp.</u>, 771 F.2d 605, 614-16 (1st Cir. 1985), and <u>Carey v. Mt. Desert Island Hosp.</u>, 156 F.3d 31, 41 (1st Cir. 1998) (citing <u>Wildman</u>, 156 F.3d at 616), in support of its position, but both are distinguishable. Both cases stand for the proposition that a district court has the discretion to deny a judicial addition of ADEA-permitted front pay damages to a substantial jury award of compensatory and liquidated damages; <u>Wildman</u> specifically noted that an award of double damages under state law could inform a court's discretion to award front pay. <u>Wildman</u>, 771 F.2d at 616. Here, however, the front pay award at issue was not determined as a matter of judicial discretion; it was tried to and found by a jury. <u>Cf. Carey</u>, 156 F.3d at 31 (discussing trial court's denial of plaintiff's request that the court add a judicially-imposed front pay award to a previously determined jury award). Even if HEI is correct that the Court would have the discretion to withhold its own front pay determination, it is not clear that <u>Wildman</u> and <u>Carey</u> would permit the Court to remit a well-considered jury award of front pay without first finding that the jury's front pay award "is grossly excessive, inordinate, shocking to the conscience of the court, or so high that it would be a denial of justice to permit it to stand." <u>Tuli</u>, 656 F.3d at 44 (quotations and citations omitted). Here, on the record before the Court as discussed above, there is no basis for such a finding.

Further, even if the Court were vested with the discretion urged by HEI, the Court would not exercise such discretion here to remit or eliminate the jury's front pay award. <u>Wildman</u> stated that a court exercising its discretion regarding front pay "should consider the circumstances of the case," including the "availability of liquidated damages," based on the notion that "future damages are often speculative." <u>Wildman</u>, 771 F.2d at 616. As the Court has already discussed, Trainor presented evidence sufficient to allow an inference that his entitlement to front pay rises above the

level of mere speculation.  Trial Transcript Day Three, D. #94 at 103-04.  In the presence of such evidence the Court would not preclude Trainor from receiving a front pay award, even in light of the statutory multiplication required by Mass. Gen. L. c. 151B, § 9.  Accordingly, the Court will not disturb the jury's front pay award.

### 4.    Emotional Distress

Jury determinations regarding emotional distress damages, as opposed to awards for other types of damages, pose unique challenges to judicial review.  The First Circuit has noted both "the esoteric nature of damages for emotional distress," Tobin v. Liberty Mut. Ins. Co., 553 F.3d 121, 145 (1st Cir. 2009) (quotations and citations omitted), and that a "court's normal disinclination to second-guess a jury's evaluation of the proper amount of damages is magnified where," as is the case with emotional distress awards, "the damages entail a monetary valuation of intangible losses." Blinzler v. Marriot Int'l, Inc., 81 F.3d 1148, 1161 (1st Cir. 1996) (quotations and citations omitted). However, "although determining whether damages for emotional distress are excessive is difficult, such damages are not immune from review."  Koster v. Trans World Airlines, Inc., 181 F.3d 24, 34 (1st Cir. 1999); see also Labonte v. Hutchins & Wheeler, 424 Mass. 813, 824-26 (1997) (finding a $550,000 award for emotional distress excessive and remanding to the trial court to determine the amount of remittitur).  Courts have ordered remittitur in a number of cases involving emotional distress damages.  See Koster, 181 F.3d at 35 (collecting cases).  Here, review of the trial record shows that the jury's award of $1,000,000 for emotional distress was grossly excessive.

To be sure, the jury was presented with evidence that Trainor suffered emotionally following the termination of his employment at HEI.  Trainor's testimony made clear that he was surprised that his employment was terminated.  See, e.g., Trial Transcript Day 2, D. #93 at 5 (Trainor's testimony

that he had expected to remain employed at HEI until his retirement).  He stated that he tried to find alternative employment after his employment at HEI was terminated but that "nothing came of that," see, e.g., id. at 77-82, that he relied on unemployment until his unemployment ran out, id. at 83, and that he and his wife Rosie had been forced to live "frugally" and were "prematurely drawing money out of retirement accounts" in order to live.  Id.  Rosie's testimony echoed that she and Trainor had been surviving financially since the termination of Trainor's employment by "us[ing] most of our life savings so far."  Transcript Day 6, D. #96, 142.

She also testified that Trainor's demeanor changed after his employment at HEI was terminated, going from "bright, witty, funny, energetic" and outgoing and with an active social life to "quiet," "distraught,"  "silent," "very withdrawn," "sad," and no longer willing to socialize.  Id. at 140-42.  Rosie also testified that she and Trainor "were closer" prior to the termination of his employment, which "really put a heavy strain on our relationship . . . it's been over two years . . . no income, all the stuff, you know, that weighs on you."  Id. at 142.  Trainor also testified about the impact of his termination (and accompanying change in financial status) on his emotional state:

> It doesn't make you feel good. It's – you know, my whole life – and I'm not complaining about it, I've climbed the ladder, I've done things I had to do to get where I needed to be, and I never asked anybody for anything.  HEI grew by 30 percent while I was there. I brought in a half a billion dollars' worth of hotels into that organization.  I brought people into that organization that are considered their top players.  You know, I've been involved with offer letters for 35 years.  I know what they are, I know what they entail, I know who gets them, I know what the process is.  I felt that I was being gamed through this thing, through this process.  And when I got the termination notice via e-mail from this employee who was previously told how much everybody loves this guy, I had to start to get my bearings, because I didn't know exactly how to interpret all of this.  I had gotten an e-mail from Ted Darnall on New Year's Eve telling me to have a great vacation – which you can't take a vacation unless your supervisor approves your vacation – and I will call you within the next couple days.  So it makes me think that we're still talking, only I never received that call.  When I finally got an offer letter from HEI, I had less than 24 business hours to make a decision about my finances that would affect the rest of my life. (Pause.) I wouldn't jeopardize my security, my wife's security

by being so cavalier as to not respond to something. It's not my lifestyle. I felt deceived, still do, and that's the picture, that's the story.

* * *

Well, yeah, I have responsibilities. I – you know, I have – Rosie means everything to me. You know, I'm going to take care of her one way or the other. It's a concern. It keeps you up at night. I mean, you can't be the age that I am thinking that tomorrow that something magical is going to happen. You know, it's who do you connect with, and you know that – I knew when I went to HEI that I only had so much work horizon left with me. So it was the reason for going there was to invest in these funds to help with my retirement, and then for later on for those things to be diminished just – I can't understand the honor there, and it's a problem I have with trying to filter through all of that. Yeah, I mean, it's – you know, it's – I've always been sort of optimistic about stuff, that's the way I am. This has been a tough situation.

Trial Transcript Day 2, D. #93 at 83-85.

Nonetheless, an award of $1,000,000 is grossly disproportionate to the evidence of emotional distress presented at trial. There was no evidence that Trainor sought medical treatment for his distress. See, e.g., Koster, 181 F.3d at 36. There was no evidence that he suffered any long-term depression or incapacitation. Id. There was no evidence of any physical manifestation of his emotional distress. The evidentiary record taken as a whole, even viewed in the light most favorable to the award rendered by the jury, is insufficient to support the jury's extraordinary emotional distress award. That is, "the award is grossly disproportionate to the evidence of emotional distress." Id. After a careful review of the record and consideration of other cases, including those offered by the parties as comparator cases,[2] the Court holds that the evidence of emotional distress

---

[2]See, e.g., Def. Memo., D. #112 at 4-9; Pl. Memo, D. #118 at 10 (collecting cases). The Court examined these cases in light of the admonitions by the First Circuit and the Supreme Judicial Court with regard to comparing verdicts from case to case. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 579-80 (1st Cir. 1989) (noting that "our past decisions have eschewed comparisons to other cases in evaluating the validity of a jury's award and have instead relied upon the specific evidence adduced in the case at hand"); Griffin v. Gen. Motors Corp., 380 Mass. 362, 371 (1980) (noting that "reasoning from such comparative verdicts from various jurisdictions is a dangerous game, to say the least") (internal citations and quotations omitted).

presented in this case would support a maximum recovery of emotional damages of $500,000.

### 5. Multiple Damages

HEI argues that the Court should not have applied multiple damages pursuant to Mass. Gen. L. c. 151B, § 9 because, HEI alleges, there is an irreconcilable inconsistency between the jury's answer to the fifth question on the special verdict form, Verdict, D. #77 at 2 (answering "yes" to the question "Has Mr. Trainor proved that when HEI committed age discrimination and/or retaliation, HEI knew or had reason to know that their actions violated Massachusetts law?") and the jury's answer to the sixth question on the form, id. (answering "no" to the question "Has Mr. Trainor proved that when HEI committed age discrimination or retaliation, HEI wilfully violated federal law?"). Trainor argues that HEI has waived any objection on the basis of inconsistencies in the special verdict because HEI failed to raise its objection prior to the discharge of the jury. At oral argument on HEI's remittitur motion, counsel for HEI conceded that, independent of the waiver issue, the Court had already addressed the issue of the applicability of multiple damages and HEI was raising the issue now solely in order to preserve the issue for appeal. Transcript, D. #127 at 73. Accordingly, the Court need not reach the waiver issue and instead relies on its previous determinations regarding the relationship between special verdict questions five and six[3] and its

___

[3]During the process of drafting jury instructions, the parties agreed that the standards for a "knowing" violation under Massachusetts law and a "willful" violation under federal law were distinct. See, e.g., Def. Proposed Jury Instructions of February 18, 2011, D. #48, at 37-40 (HEI proposes separate jury instructions for knowing violations of Massachusetts law and for willful violations of federal law including distinct standards for each); Pl. Proposed Jury Instructions of February 19, 2011, D. #59 at 23-24 (Trainor also proposes separate jury instructions for knowing violations of Massachusetts law and for willful violations of federal law); Def. Proposed Special Verdict Form, D. #50 at 4 (HEI proposes separate special verdict questions for knowing violation under Massachusetts law and for willful violation under federal law); Pl. Proposed Special Verdict Form, D. #58 at 1-2 (Trainor also proposes separate special verdict questions for knowing violation under Massachusetts law and for willful violation under federal law); Def. Opp. to Pl. Special Verdict Form, D. #71 (HEI objects to all of Trainor's proposed special

ruling regarding the applicability of multiple damages.  Trainor, 2011 WL 1670234 at *1.  The Court

will not disturb its application of statutorily required multiplication of damages to the jury's award.

###### 6.      Summary

For the reasons discussed above, HEI's motion for remittitur is GRANTED in part and

DENIED in part.  The Court will remit the jury award for emotional distress damages to $500,000,

and will leave undisturbed the jury awards of $500,000 in back pay and $750,000 in front pay,

resulting in a total initial award for Trainor in the amount of $1,750,000, doubled pursuant to Mass.

Gen. L. c. 151B, § 9 for a total of $3,500,000.  Trainor shall inform the Court by January 27, 2012

whether he seeks accepts the remitted award or, instead, seeks a new trial on the issue of emotional

distress damages.  If the former, prejudgment interest shall be levied at a rate of 12% on $1,000,000

of the judgment.[4]

#### C.      Trainor's Motion for Fees and Costs

To award attorney's fees, this Court must first determine if a party is entitled to fees, and,

if so, the Court must next determine the amount of fees appropriate.  Hensley v. Eckerhart, 461 U.S.

424, 433 (1983).

###### 1.      Entitlement to Attorney's Fees

Both the federal Age Discrimination in Employment Act and the Massachusetts state anti-

---

verdict questions except the two distinct questions regarding knowing violations under
Massachusetts law and willful violations under federal law).  There were no later objections
suggesting otherwise.  See Trial Transcript Day Seven, D. #97 at 201-04.

[4]The Court's original judgment levied prejudgment interest on $1,500,000 of the jury
award, which was an amount equal to the jury's awards for back pay and emotional distress prior
to statutory doubling.  Judgment, D. #105.  After remitting the emotional distress award to
$500,000, the amount of the award for back pay and emotional distress prior to statutory
doubling is $1,000,000.

discrimination laws mandate an award of reasonable attorneys fees and costs to a prevailing party. 29 U.S.C. §§ 216(b), 626(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action"); Mass. Gen. L. c. 151B, § 9 ("If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust").  "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley, 461 U.S. at 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  There is no dispute that Trainor is a prevailing party and is thus entitled to fees.

### 2.      Amount of Attorney's Fees

Attorney's fees are calculated by determining a "lodestar amount" and then, if necessary, adjusting that amount to ensure that the fee amount is reasonable. Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564-65 (1986).  Both Massachusetts courts and federal courts in this circuit customarily use the lodestar approach to determine fee amounts. Burke v. MacDonald, 572 F.3d 51, 56 n.5 (1st Cir. 2009); Fontaine v. Ebtec Corp., 415 Mass. 309, 324-26 (1993).

### a.      Lodestar Calculation

To calculate the appropriate lodestar amount, this Court must determine "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295 (1st Cir. 2001) (quoting Hensley, 461 U.S. at 433). The party seeking an award of attorney's fees bears the burden of establishing and documenting the

hours expended and the hourly rates charged.  Torres-Rivera v. O'Neill-Cancel, 524 F.3d 331, 340

(1st Cir. 2008).

## I.     Reasonable Hours Expended

Trainor's burden requires him to provide an accurate representation of the hours worked.

See Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 952 (1st Cir. 1984).  Under the lodestar approach,

the trial judge calculates the total number of hours that counsel spent on the case and subtracts

"duplicative, unproductive, or excessive hours . . . ."  Gay Officers Action League, 247 F.3d at 295.

A contemporaneous record of the hours worked is the best way for this Court to make an accurate

calculation of the hours expended on the matter.  Grendel's Den, 749 F.2d at 952.  Here, Trainor's

counsel submitted to the Court not only contemporaneous record of the hours they worked on this

case, but a summary of those timesheets that provides a chronology of the attorneys' hours expended

through the course of this litigation.  See Petition for Attorney's Fees and Costs, D. #106, Exhibits

D (summary of timesheets), D. #106-4, and E (Timesheets), D. #106-5.  Trainor has itemized his

summary of timesheets in some detail; the hours expended by his counsel are broken out by

individual attorney or legal assistant,[5] and on a month by month basis for the duration of Trainor's

counsel's representation beginning in November 2008 and running until the entry of judgment in

---

[5]The petition's billing summary names six attorneys, three paralegals and four law students from Northeastern Law School who worked on Trainor's case.  Petition, Ex. E, D. #106-4 at 2.  One lawyer and three law students who did a very small amount of work are not named in the billing summary, but their work is recorded therein and their names are included in the complete billing records provided by Trainor to the Court.  Petition, Ex. E, D. #106-4 at 4, 8, 11 (billing summary entries identifying individuals by initials); Ex. F, D. #106-5 at 31-32, 110, 142 (itemized billing entries identifying individuals by name).  According to the petition, the overwhelming majority of the hours expended in the case were expended by Attorneys David Rapaport and Laurie Alexander-Krom.  Id. at 2-13.  Specifically, Attorneys Rapaport and Alexander-Krom expended 1,293.7 hours on the case, just under 90% of the total hours expended on the case.  Id.

April 2011.

In sum, Trainor seeks fees for 1,356.35 hours of work by attorneys, 63.2 hours of work by paralegals, and 33.1 hours of work done by law student assistants.  See generally Petition, Ex. E, D. #106-4.  HEI challenges this as an unreasonable amount number of hours expended on a variety of grounds, each of which the Court will address in turn.

a)   **Unsuccessful Claims**

First, HEI argues that Trainor should not receive fees for hours expended on his age discrimination claim, rather than his retaliation claim, because he did not prevail on the former claim.  The Supreme Court noted in Hensley that "[i]n some cases a plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.  In such a suit, even where the claims are brought against the same defendants . . . counsel's work on one claim will be unrelated to his work on another claim.  Accordingly, work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved . . . [and] no fee may be awarded for services on the unsuccessful claim."  Hensley, 461 U.S. at 434-35 (internal citations and quotations omitted).  But the Hensley court noted further that "[i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency," in part because often in civil rights cases "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories.  Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  Id. at 435.

This case is precisely the type of civil rights case anticipated by the latter comments in Hensley. Here, the legal theory underlying Trainor's successful retaliation claim is closely related to the theory underlying his unsuccessful age discrimination claim. Indeed, the Court specifically instructed the jury that the first element Trainor was required to prove in support of his retaliation claim was that he "reasonably and in good faith believed that HEI was engaged in discrimination." Trial Transcript Day Seven, D. #97 at 188. See Mesnick v. General Elec. Co., 950 F.2d 816, 827 (1st Cir. 1991) (holding that an ADEA plaintiff alleging retaliation may prevail without fully proving an underlying discrimination claim as "[i]t is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred"). Similarly, the evidence Trainor presented to the jury in support of his age discrimination claim was essential to his efforts to establish the good-faith belief element of his retaliation claim. Where, as here, "the successful and unsuccessful claims arose from the same common core of facts or were based on related legal theories," the "rationale for discounting hours spent on unsuccessful claims does not apply." Bogan v. City of Boston, 489 F.3d 417, 428 (1st Cir. 2007). Accordingly, Trainor's failed age discrimination claim does not warrant a reduction of hours.

### b) Unsuccessful Motion in Limine

Second, HEI seeks to exclude from the lodestar calculation the hours Trainor's counsel spent on Trainor's first motion in limine, regarding the admissibility of evidence surrounding Trainor's mitigation efforts, because Trainor did not prevail on that specific motion in limine. This argument in unavailing in light of the fact that Trainor's mitigation efforts were, and continue to be, one of the most hotly contested issues in this case - indeed, HEI continues to dispute the sufficiency of the evidence that Trainor tried to mitigate his damages, including resting a great deal of its post-verdict

remittitur motion on the mitigation issue. While Trainor did not prevail on his first motion in limine, over the course of this litigation he did prevail on a series of disputes with HEI over the proper handling of mitigation and he ultimately convinced the jury that he had presented sufficient evidence of his mitigation efforts. It is the Court's conclusion that Trainor's counsel's work on Trainor's first motion in limine was neither "unproductive" nor "excessive" to Trainor's overall success in this litigation, Gay Officers Action League, 247 F.3d at 295, and accordingly Trainor's failed first motion in limine does not warrant a reduction of hours.

### c) Settlement Negotiations

Third, HEI argues that Trainor should not recover attorney's fees for the time spent on unsuccessful settlement negotiations. HEI's sole argument in support of its position is that, as a matter of public policy, fees incurred in settlement should not be recoverable because, HEI asserts, parties would be less likely to attempt settlement knowing that should the negotiations prove unsuccessful, they might be forced to pay not only their own but the other party's fees and costs, despite having no control of these costs. See Def. Memo., D. #113 at 9 (raising public policy argument and citing as proof of Massachusetts' policy in favor of settlement Cabot Corp. v. AVX Corp., 448 Mass. 629, 638 (2007) (noting the "well established public policy favoring the private settlement of disputes")). The Court agrees that public policy favors settlement, but finds that this consideration cuts against rather than for HEI's argument. Specifically, the Court is wary of describing good-faith settlement negotiations, even those that ultimately fail, as an "unproductive" use of attorney's time, Gay Officers Action League, 247 F.3d at 295, and is equally hesitant to describe settlement efforts as "excessive," id., unless counsel's time and money is spent excessively

on such efforts. That is not the case here.[6] The failed settlement negotiations between Trainor and HEI do not warrant a reduction of hours.

### d) Focus Groups

Fourth, HEI argues that Trainor should not recover attorney's fees for the time his counsel spent in focus groups honing trial strategy and evaluating the likelihood that Trainor would prevail before a jury. HEI cites to no authority in support for the general position that time spent in focus groups should be excluded from lodestar calculations. Other courts have reached a contrary conclusion. See United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990) (finding "no reason why these hours [spent on jury consultation and moot courts] cannot be included in a fee award as long as the number of hours spent was reasonable"); BD v. DeBuono, 177 F.Supp.2d 201, 204 (S.D.N.Y. 2001) (allowing fees for trial consultants and noting that "[i]f plaintiffs' counsel had organized mock trials themselves, or done their own jury consulting research, the hourly rates they charged for those services would be reimbursable as part of an attorneys' fee award"). Nor does HEI cite to any facts in support of the specific position that the time Trainor's counsel spent in focus groups for this case should be excluded as excessive or unproductive.[7] In light of the jury's verdict in this case, the time spent by Trainor's counsel appears to have been productive. Such use of time by Trainor's counsel does not warrant a reduction of hours.

---

[6]HEI does not list the hours it would like removed from the lodestar calculation as a result of failed settlement negotiations; instead, it lists the dollar amount it would like removed from Trainor's attorney's fees on this ground. Def. Reasons for Reduction Spreadsheet, D. #113-2 at 1. The amount at issue is $4,515.75, which is less than 1% of the total amount of fees of $506,117.75 sought by Trainor. Petition, D. #106 at 1.

[7]Again, HEI lists the dollar amount rather than the hours it would like removed from the lodestar calculation as a result of time spent in focus groups. Def. Reasons for Reduction Spreadsheet, D. #113-2 at 1. The amount at issue is $25,348.75, which is just over 5% of the total amount of fees sought by Trainor. Petition, D. #106 at 1.

19

### e)    Duplicative Staffing

Fifth, HEI argues that, in instances where multiple attorneys working on Trainor's behalf attorneys participated in the same meeting, deposition or intra-office conference, the lodestar calculation should reflect the work of one attorney and any additional hours should be deemed duplicative or excessive. When performing lodestar calculations, "the time for two or three lawyers in a courtroom or conference, when one would do, may obviously be discounted." Hart v. Borque, 798 F.2d 519, 523 (1st Cir. 1986) (citation and quotations omitted). Here, however, the Court is persuaded that Trainor's reliance on Mr. Rapaport and Ms. Alexander-Krom working in concert to handle the overwhelming majority of work in this case was necessary and not duplicative. See Petition for Attorney's Fees and Costs Ex. D (summary of timesheets), D. #106-4. First, although there were a number of legal professionals who billed time to Trainor's case over the life of the litigation, just under 90% of that time was billed by Attorneys Rapaport and Alexander-Krom. It appears that the instances where Attorney Rapaport consulted with other attorneys at his firm other than Attorney Alexander-Krom, such consultation was necessary (particularly in regard to certain issues that arose regarding Trainor's investment in the HEI fund, for example) and were kept to a minimum. Id. Second, as the summary of timesheets and the timesheets themselves reflect, although Attorneys Rapaport and Alexander-Krom were often expending time on the case at the same time in the phases of litigation before the trial, Attorney Rapaport, lead counsel, appropriately was expending more time as he advised Trainor in his final weeks at HEI, asserted a claim before the MCAD and formulated a strategy for filing his claims in this case. As Attorney Rapaport's affidavit attests, "I planned to (and did) do the major work on the case." Petition Ex. A, D. #106-1 at ¶12. In fact, whereas Attorney Rapaport expended a total of 808.5 hours on this matter, Attorney

Alexander-Krom expended only 478.7 hours (of which, 161.9 hours she spent on trial preparation and trial).[8] Attorney Hours Spreadsheet, Petition Ex. E., D. #106-5 at 3. Third, the Court does not believe that the time that Attorneys Rapaport and Alexander-Krom were working in concert was duplicative or excessive given the complexity of the claims, discovery, summary judgment motions or issues at trial. Accordingly, Trainor's use of multiple attorneys was reasonable under the circumstances and does not warrant a reduction of hours.

### f) Total Compensable Hours

Given that Trainor's proposed amount of total compensable hours as set forth in the contemporaneous records and summary thereto provided by Trainor to the Court, Petition Ex. D (summary of timesheets), D. #106-4, and E (timesheets), D. #106-5, and given that none of HEI's objections to Trainor's counsel's use of time warrant a reduction in the amount of compensable hours proposed by Trainor, the Court holds that Trainor's proposal reflects a reasonable expenditure of hours on the instant litigation. Gay Officers Action League, 247 F.3d at 295.

### ii. Reasonable Hourly Rate

A reasonable hourly rate is determined based on the "prevailing rates in the community (taking into account the qualifications, experience, and specialized competence of the attorneys involved)." Gay Officers Action League, 247 F.3d at 295. Trainor's proposed hourly rate calculations vary by individual attorney, by category of legal assistant and by time.

In 2008, Attorney Rapaport billed at a rate of $400 per hour. Attorney John Lynch billed at a rate of $385 per hour. No other attorneys or legal staff expended hours on this case in 2008.

---

[8]To the extent HEI objects to the presence of both Mr. Rapaport and Ms. Alexander-Krom at trial, Def. Memo, D. #113 at 11, the Court notes that HEI, like Trainor, was represented by two attorneys throughout trial.

Petition Ex. D (summary of timesheets), D. #106-4.

In 2009, Attorney Rapaport continued to bill at a rate of $400 per hour. Attorney Lynch generally continued to bill at a rate of $385 per hour.[9] Attorney Alexander-Krom billed at a rate of $260 per hour. Attorney Thomas Fitzpatrick billed at a rate of $375 per hour. Attorney David Cogliano billed at a rate of $300 per hour. Paralegals billed at a rate of $150 per hour. Law students billed at a rate of $125 per hour. Id.

In 2010, Attorney Rapaport billed at a rate of $420 per hour. Attorney Alexander-Krom billed at a rate of $275 per hour. Attorney Lynch billed at a rate of $400 per hour. Attorney Cogliano billed at a rate of $315 per hour. Attorney James Gallagher billed at a rate of $240 per hour. Attorney Avi Lev billed at a rate of $400 per hour. Paralegals billed at a rate of $160 per hour. Law students billed at a rate of between $125 and $165 per hour, depending on the individual law student. Id.

In 2011, Attorney Rapaport billed at a rate of $425 per hour. Attorney Alexander-Krom billed at a rate of $285 per hour. Attorney Lynch billed at a rate of $420 per hour. Attorney Gallagher billed at a rate of $250 per hour. Paralegals billed at the rate of $165 per hour. Id.

Trainor support his request for these fee rates with affidavits from Attorneys Rapaport, Alexander-Krom and Lynch explaining their backgrounds and their customary fee rates, Petition Ex. A, B and C, D. #106-1, -2, and -3, as well as with supporting affidavits from Attorneys Jonathan Margolis, Paul Merry and Philip Gordon. Petition Ex. F, G and H, D. #106-6, -7 and -8. Attorney Margolis is an employment law attorney and a partner in the firm of Rodgers, Powers & Schwartz,

_____

[9]Attorney Lynch billed at a slightly higher rate, $395 per hour, in January 2009, when he expended 3.7 hours on this case. He billed at a rate of $385 per hour for the remainder of 2009. Petition Ex. D (summary of timesheets), D. #106-4.

LLP.  Petition Ex. F, D. #106-6 at ¶¶ 3-4.  Attorney Merry is also an employment law attorney and a former general counsel to the MCAD.  Petition Ex. G, D. #106-7 at ¶¶ 2-3.  Attorney Gordon is President of the Massachusetts Employment Lawyers Association and the managing partner of Gordon Law Group, LLP.  Petition Ex. H, D. #106-8 at ¶¶ 1, 3.  These affidavits all support the position that the rates billed by Trainor's attorneys were comparable to or lower than the prevailing local market rate for attorneys with similar expertise and experience in the field of employment law and civil rights.

HEI objects to Trainor's proposed rates, and points to a handful of employment discrimination cases in this district where courts approves lower rates when resolving fee petitions. Def. Memo., D. #113 at 12-13 (citing Ferraro v. Kelly, 2011 WL 576074, at *4-*6 (D. Mass. Feb. 8, 2011); Kennedy v. Town of Billerica, 2008 WL 2945436, at *1-*2 (D. Mass. Jul. 24, 2008) (vacated on other grounds by Kennedy v. Town of Billerica, 617 F.3d 520 (1st Cir. 2010)); Dixon v. Int'l Bhd. of Police Officers, 434 F.Supp.2d 73, 86-88 (D. Mass. 2006)).

HEI's objection is unpersuasive for three reasons.  First, the cases cited by HEI involved attorneys with less experience than Trainor's attorneys.  See Ferraro, 2011 WL 576074, at *6 (discussing the case's lead assisting attorney, a second-year associate, whose experience is significantly less than Attorney Alexander-Krom, who has been practicing law for over 13 years); Dixon, 434 F.Supp.2d at 86-88 (discussing the case's lead attorney, who had ten years of practice experience, significantly less than Attorney Rapaport's over 40 years of experience, and the case's lead assisting attorney, a fifth-year associate, whose experience is less than that of Attorney Alexander-Krom); Kennedy, 2008 WL 2945436, at *1-*2 (categorizing lead attorneys as having "ten years of experience in employment law," less than the experience of either Attorney Rapaport

or lead assistant Attorney Alexander-Krom). Second, the <u>Dixon</u> and <u>Kennedy</u> cases are significantly removed in time, and as Judge Woodlock pointed out in his ruling in <u>Ferraro</u>, the main case relied upon by HEI, "[i]t is reasonable as time passes for billing rates to increase. This is not only the result of inflation, but also the recognition that qualified individuals tend to become more experienced with time and should be compensated accordingly." <u>Ferraro</u>, 2011 WL 576074, at *5 (citing <u>Burke v. McDonald</u>, 2007 WL 2826248, at *3 (D. Mass. Sept. 28, 2007) (noting that "rates change with time")). Finally, as the supporting affidavits provided by Attorneys Margolis, Merry and Gordon make clear, courts in this district have approved significantly higher lodestar rates than those sought here by Trainor. <u>See</u> Petition Ex. F (Margolis Aff.), D. #106-6 at ¶¶ 11-12 (discussing lodestar rates in employment discrimination cases of between $525 and $615 per hour); Petition Ex. G (Merry Aff.), D. #106-7 at ¶¶ 9-11 ("I am aware of attorney's fees that . . . have been awarded to successful plaintiffs in employment cases in the Greater Boston area," and "I regard [Attorney Rapaport's proposed] hourly rate as reasonable if not modest"); Petition Ex. H. (Gordon Aff.), D. #106-8 at ¶¶ 8, 10 ("My firm has been awarded fees based on lodestar rates of $585 per hour for my work" and "[f]rom my experience and my knowledge of the rates charged and the rates approved by courts in employment cases, I believe that [Attorney Rapaport's proposed] rates are reasonable, if not modest"). In light of the record supporting the petition, and upon an independent review of attorney's fees awards in this district, the Court holds that the lodestar rates proposed by Trainor are reasonable.

### iii. Total Lodestar Amount

In light of the reasonable hours expended by Trainor's counsel and the prevailing local rates, the Court calculates the total lodestar amount as $506,113.25. The Court's calculations, broken

down by individual attorney or legal assistant, are as follows:

-     <u>Attorney Rapaport</u>:
  - 323.2 hours in 2008 and 2009 at $400 per hour = $129,280.00
  - 242.8 hours in 2010 at $420 per hour = $101,976.00
  - 249.0 hours in 2011 at $425 per hour = $105,825.00
  - *Total for Attorney Rapaport: $337,081.00*

-     <u>Attorney Alexander-Krom</u>:
  - 104.8 hours in 2009 at $260 per hour = $27,248.00
  - 174.5 hours in 2010 at $275 per hour = $47,987.50
  - 199.4 hours in 2011 at $285 per hour = $56,829.00
  - *Total for Attorney Alexander-Krom: $132,064.50*

-     <u>Attorney Lynch</u>:
  - 7.1 hours in 2008 and 2009 at $385 per hour = $2,733.50
  - 3.7 hours in 2009 at $395 per hour = $1,461.50
  - 20.1 hours in 2010 at $400 per hour = $8,040.00
  - 0.5 hours in 2011 at $425 per hour = $212.50
  - *Total for Attorney Lynch: $12,447.50*

-     <u>Attorney Lev</u>:
  - 1.2 hours in 2010 at $400 per hour = $480.00
  - *Total for Attorney Lev: $480.00*

-     <u>Attorney Cogliano</u>:
  - 2.8 hours in 2009 at $300 per hour = $840.00
  - 4.8 hours in 2010 at $315 per hour = $1,512.00
  - *Total for Attorney Cogliano: $2,352.00*

-     <u>Attorney Gallagher</u>:
  - 21.6 hours in 2010 at $240 per hour = $5,184.00
  - 6.7 hours in 2011 at $250 per hour = $1,675.00
  - *Total for Attorney Gallagher: $6,859.00*

-     <u>Attorney Fitzgerald</u>:
  - 0.25 hours in 2009 at $375 per hour = $93.75
  - *Total for Attorney Fitzpatrick: $93.75*

-     <u>Paralegals</u>:
  - 4.8 hours in 2009 at $150 per hour = $720.00
  - 4.7 hours in 2010 at $160 per hour = $752.00
  - 53.7 hours in 2011 at $165 per hour = $8,860.50
  - *Total for Paralegals: $10,332.50*

- Law Students:
  24.9 hours in 2009 and 2010 at $125 per hour = $3,112.50
  2.5 hours in 2010 at $140 per hour = $350.00
  5.7 hours in 2010 at $165 per hour = $940.50
  *Total for Law Students: $4,403.00*

- Grand Total: $506,113.25

### b. Adjustment

To ensure a reasonable fee, adjustments of the lodestar figure are permissible, but "such modifications are proper only in certain 'rare' and 'exceptional' cases," and even then supported only by "specific evidence on the record" and "detailed findings" by the Court. Del. Valley, 478 U.S. at 565 (1986) (quoting Blum v. Stenson, 465 U.S. 886, 898-901 (1984)). Here, no party has sought an adjustment of the fees amount outside of the lodestar calculation. See generally Petition, D. #106 (omitting any request for an upward adjustment); Pl. Memo, D. #107 (same); Def. Memo, D. #113 (contesting items and rates to be included in the lodestar calculation but omitting any request for a downward adjustment from the calculation itself). Accordingly, the Court GRANTS Trainor's motion for fees and awards fees in the amount of $506,113.25, equal to the lodestar calculation.

### 3. Costs

Both the federal Age Discrimination in Employment Act and the Massachusetts state anti-discrimination laws mandate an award of costs in addition to fees. 29 U.S.C. §§ 216(b), 626(b); Mass. Gen. L. c. 151B, § 9. Trainor seeks costs in the amount of $27,439.90 for his expenditures on deposition transcripts, the trial transcript, expert witness fees, filings fees, trial subpoenas, photocopies and charges associated with electronic legal research and supports his request with itemized records. Petition, Ex. I, D. #106-9. These all fall within the categories of allowable costs

recognized by courts in this district. <u>Fryer v. A.S.A.P. First and Safety Corp.</u>, 750 F.Supp.2d 331, 341 (D. Mass. 2010) (allowing costs including payment of expert witnesses, filing, service fees, copying, travel, parking and depositions); <u>Bandera v. City of Quincy</u>, 220 F.Supp.2d 26, 50 n.36 (D. Mass. 2002) (allowing costs including postage, constable fees, messenger fees, local transportation, filing fees, courier services, court reporting fees for deposition, mediation fees, computer research, meals, telephone, postage, parking, facsimile transmissions, reproduction expenses, and telecopy charges). In light of these cases, the Court is unpersuaded by HEI's suggestion that Trainor be required to absorb some of its costs - specifically certain courier charges and overnight delivery and copying costs, <u>see</u> Def. Memo, D. #113 at 11 - as overhead. The expenditures disputed by HEI are recoverable costs specific to the case at hand rather than general overhead costs. Accordingly, the Court GRANTS Trainor's motion for costs and awards costs in the amount of $27,439.90.

### D. Trainor's Motion for Equitable Relief

Trainor seeks an injunctive order from the Court requiring HEI to allow Trainor to invest in certain HEI restricted funds that provided investment opportunities to a select group of individuals, including HEI employees, that Trainor has not been able to invest in since the termination of his employment. Pl. Motion Seeking Equitable Relief, D. #66; Pl. Supplemental Motion, D. #87. The parties agree that, for the purposes of resolving Trainor's motion, HEI's restricted funds are analogous to pension plans, which courts have treated as an equitable component of front pay damages in age discrimination cases. <u>See</u> Pl. Motion, D. #66 at 2-3 (citing <u>Greene v. Safeway Stores</u>, 210 F.3d 1237, 1243-44 (10th Cir. 2000); <u>Blim v. W. Elec. Co.</u>, 731 F.2d 1473, 1480 (10th Cir. 1984)); Def. Response, D. #75 at 1 ("HEI concedes for the purposes of Plaintiff's Motion that pension plans are analogous to HEI's investment funds"). HEI's sole objection to this form of relief

is its assertion, raised not only here but also in its remittitur motion with regard to front pay, that the notion that Trainor's employment with HEI would have continued until early 2014 but for HEI's retaliatory termination of his employment in early 2009. Def. Supp. Response, D. #84 at 9-11. For the reasons discussed above in the context of HEI's remittitur motion, the Court is unpersuaded by this objection.[10] Accordingly, Trainor's motion for equitable relief is GRANTED. An injunctive order consistent with this ruling will be filed simultaneously with this memorandum and order.

## III. Conclusion

For the aforementioned reasons, the rulings on the pending motions shall be entered as indicated above.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[10]The parties agree that if the equitable relief sought by Trainor is granted, it should be Trainor, and not HEI, who pays for Trainor's participation in HEI's restricted funds. Further, HEI asserts, and Trainor concedes, that if Trainor participates in the funds, he must comply with his obligations to meet the funds' capital calls. Def. Supp. Response, D. #84 at 9-11; Pl. Supplemental Motion, D. #87 at 3.